Freeman, J.,
delivered the opinion of the Court.
Tarkington conveyed a tract of land by deed of trust to James D. Earley, of date 32th day of July, 1865. Said deed was intended to secure Nathaniel Young, Sr., a note due 29th March, 1863, for $700; William Walker’s note, due same date, for $1,775; a note due to Wm. Anderson, due as above for $1,575; and one to Jane Whooton for $700; and then the deed adds: “ Fifthly, to secure a note due complainant Swanson, due December, 1861, for $1,500;” and “ sixthly, Sherrod A. Gray (the other complainant) a note due one day after date for $1,000.” By a sub *613 sequent clause of the deed, the first four debts are to be paid first out of proceeds of the property conveyed, and if a surplus is left, this to be paid on the notes of Swanson and Gray above mentioned.
This bill was filed by Swanson and Gray, to enjoin the sale of the property by the trustee on two grounds mainly. First, that the preferred notes were all based on the consideration of Confederate money loaned to the maker of the deed of trust, Tarkington, except perhaps five hundred dollars of the Walker debt, and were therefore illegal and void — the prayer of the bill being that the trustee be peremptorily enjoined from paying these notes out of the proceeds of said land; and, second, that the land had been encumbered after the making and registration of the deed of trust, by two sales made under executions from a court of record; said judgments being obtained October, 1861, and the sales made, the one in March, 1866, the other July, 1866, and that the deeds obtained from the Sheriff under these sales were clouds on the title, which ought to be cleared up before the sale was made, in order that the property should bring its full value.
The complainants insist on having these debts referred to declared void, and then ask a sale of the property under the deed of trust, and proceeds to be applied to the payment of their own debts secured by the deed. In other words, complainants claim the benefit of the deed of trust for their own debts, but repudiate the deed and its provisions in favor of the other beneficiaries under it, and insist that their debts secured by the deed have no exist *614 ence, and that the deed shall be declared void as to them.
It is certain that a creditor can not be compelled against his own will to accept the benefit sought to be conferred by a deed of trust. He may either accept or reject it at his election; and it seems to be settled in England that the debtor is hot bound by his assignment unless the creditors are in some way privies to it, or have assented thereto; the assignment being treated as a mere power, which may be revoked by the assigning debtor at his pleasure before acceptance.
The American doctrine has not gone to this extent precisely, but it is nevertheless the well settled principle that assent, either express or implied, on the part of the creditor, is necessary to fix his rights under the instrument. See Tiffany & Bullard on Trusts and Trustees, 278, 279.
The assent of the creditor is conclusively manifested, however, by seeking to avail himself of the benefit of the deed, and we may add' that the parties are conclusively fixed as assenting to the deed when a bill is filed to enforce their rights under it. See Tiff. & Bull., 293.
The party had his election to take the benefit under the deed, or to repudiate it and file his bill to set it aside as fraudulent, or as having been made to secure debts having no legal existence, and therefore without consideration. He has elected to become a party to the instrument; and the question is, whether he can claim under the instrument and at the same time repudiate it? The sound principle is thus stated *615 in the case of Thelluson v. Woodford, cited in Story’s Eq. Juris., vol. 2, top p. 304, “that a person shall not claim an interest under an instrument without giving full effect to that instrument as far as he can.” This doctrine is usually applied to the familiar case of election under wills, but is equally applicable to deeds. See Birmingham v. Kirkman, 1 Sch. & Lef., 449, 450.
The rule is thus stated by Mr. Story, vol. 2, Eq. Jur., s. 1077, in reference to wills: “That there is an implied condition that he who accepts a benefit under .an instrument shall adopt the whole, conforming to all its provisions, and renouncing every right inconsistent with it.” It has also been held in Adlum v. Yard, 1 Rawl., 163, that a creditor who has confirmed a fraudulent deed, by receiving a benefit under it, is estopped from afterwards impeaching it.” See Am. L. Cases, vol. 1, 101; and the case is stronger when the party, as in this case, comes into a court and asks the enforcement of the trust under the deed. We hold, therefore, that the complainants are estopped by their own act in seeking to have the benefit of the deed of trust in this proceeding to enforce it, from disturbing or controverting the rights of other creditors secured by the conveyance.
We only apply this principle to the facts of this case where the parties have acted with full knowledge of the consideration of the deed, and after such knowledge affirm the deed by seeking its enforcements.
The next question presented is as to the validity of the sales made under executions referred to, as against the registered deed ' of trust. It will be seen *616 that the judgments were obtained in 1861, and no sale made, nor we believe any levy made, until 1866, nearly á year from registration of the deed of trust.
It is insisted by the parties that the lien of their judgments continued for twelve months after the termination of the late civil war, and that they were prevented from enforcing them by the effect of said war.
This question has been settled by this Court in the case of Smart & Evans v. Mason, 2 Heis., 224, in which the case of Branner v. Nance, 3 Col., is referred to, and a deed of conveyance held to override an execution sale under a like . state of facts as insisted on in this case. That opinion, by Chief Justice Nicholson, was affirmed on petition for rehearing, and we see no reason to disturb it. There are many points of dissimularity between such a lien as is given by our statute and -a statute of limitations. ¥e need not go into this question here further than to state one very material point of difference, one that is made in some of the answers in this case; that is, that the debtor had ample personal property, on which a levy might have been made to satisfy the debt.
Before the termination of the war this was true in a large number of cases where property in slaves existed. It was in such case the duty of the creditor to levy on this character of property before resorting to real estate, and, on failure to do so, he would have lost the benefit by his own laches.
We consider the question as res adjudícala, and as not admitting of any further discussion. In any aspect *617 of the case, on the first question presented, the parties are not entitled to the relief sought by the bill; as the point made is, that the notes are illegal- and void, a question which we have repeatedly adjudged, to the contrary of the position assumed.
As to the question insisted on in the briefs, that the creditors can only recover the value of the Confederate money, it is enough to say that no such question is presented or any issue of the kind raised in the pleadings, and therefore we can not notice it, no proof having been taken on the question in Court below.
The decree of the Chancellor will be reversed, and a decree entered here in accordance with this opinion.
Swanson & Gray will pay costs of this Court; the balance costs will be paid out of the fund arising from the sale.